In re the MARRIAGE OF Lisa Dawn HOLDEN and Johnny Lee Roger Holden.

Lisa Dawn HOLDEN, Petitioner–Appellant,

v.

Johnny Lee Roger HOLDEN, Respondent–Respondent.

No. 22008.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 30, 1998.

952

Susan F. Butler, Joplin, for Appellant.

Johnny Lee Roger Holden, pro se.

Before GARRISON, C.J.,
MONTGOMERY, J., and SHRUM, P.J.

PER CURIAM.

This appeal is from a judgment modifying an award of child custody. B.H. was born on May 9, 1995. Her parents, Lisa Dawn Morgan ("Mother") and Johnny Lee Roger Holden ("Father"), separated in December 1995, and Mother filed a petition for dissolution of marriage. It was discovered during that proceeding that Mother's previous marriage had not been dissolved, and thus instead of a dissolution, her marriage to Father was annulled in June 1996. In the judgment annulling the marriage, Mother was awarded custody of B.H.; Father was ordered to pay child support of $150 per month; Father was awarded reasonable visitation rights; and Mother was permitted to move with B.H. to Colorado so that she could be with her mother who lived in Colorado Springs.

In April 1997, Father filed a motion to modify in which he sought custody of B.H. or, in the alternative, specific visitation privileges. The case was tried in September 1997, and the trial court subsequently entered a judgment awarding custody of B.H. to Father, granting Mother reasonable visitation, and cancelling the child support order. Mother appeals.

Before reviewing the merits of this case, it is necessary that we address the issue of the trial court's jurisdiction. It is undisputed that Father was a resident of Missouri, and that Mother and B.H., as authorized by the annulment decree, were living in Colorado. The parties agree in their briefs that B.H. was born in Missouri and lived here until moving to Colorado with Mother after the June 1996 annulment decree. Mother did not initially challenge the jurisdiction of the trial court to entertain the motion to modify, but does so on this appeal.

Mother's first point relied on is:

The trial court erred in finding that it had subject matter jurisdiction in this case without specific findings of fact on which jurisdiction could be based, when the home state of the child is Colorado; when the child has no significant connection to Missouri and no substantial evidence exists in Missouri concerning the current or future welfare of the child. This error was contrary to the credible evidence presented and was, in fact, against the weight of the evidence.

Section 452.450 [1] is part of the Uniform Child Custody Jurisdiction Act (UCCJA) and concerns the jurisdiction of courts to make custody determinations, either by initial or modification decrees.[2] Section 452.410.1 ac-

---

1. Statutory references are to RSMo 1994, unless otherwise indicated.

2. Section 452.450 reads, in pertinent part:
   A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
   (1) This state:
   (a) Is the home state of the child at the time of commencement of the proceeding; or
   (b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or person acting as parent continues to live in this state; or
   (2) It is in the best interest of the child that a court of this state assume jurisdiction because:
   (a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and
   (b) There is available in this state substantial evidence concerning the child's present or fu-
   ture care, protection, training, and personal relationships; or
   (3) The child is physically present in this state and:
   (a) The child has been abandoned; or
   (b) It is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse, or is otherwise being neglected; or
   (4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.
   2. Except as provided in subdivisions (3) and (4) of subsection 1 of this section, physical presence of the child, or of the child and one of the litigants, in this state is not sufficient alone to confer jurisdiction on a court of this state to make a child custody determination.

knowledges the applicability of § 452.450 to modification proceedings by providing that no court shall modify a prior custody decree unless it has jurisdiction under the provisions of § 452.450.

In the instant case, the trial court found that it had jurisdiction pursuant to § 452.450.1(2)(b), and quoted the language of that statutory provision.[3] In *Piedimonte v. Nissen*, 817 S.W.2d 260, 266 (Mo.App. W.D. 1991), however, the court said that "a ruling of jurisdiction by a court that is merely conclusory or that assumes jurisdiction, but is tacit as to the factual basis for that adjudication, does not meet the objectives of the Act."

The trial court also noted, however, that no party challenged its jurisdiction by pleading or evidence, and that both parties were present at the hearing and participated in it. Accordingly, Father argues that Mother waived the jurisdictional issue by not raising it in the trial court. In support, he cites *Brown v. Brown*, 676 S.W.2d 519 (Mo. banc 1984). Similar to the instant case, *Brown* involved parents and two children who were Missouri residents when the original custody decree was entered. The mother was permitted to move with the children to another state. The father, who remained a resident of Missouri, later successfully sought custody in a motion to modify filed in the Missouri court which originally entered the custody decree. The mother apparently did not contest the trial court's jurisdiction under the UCCJA until she appealed from the judgment modifying the custody decree. The Missouri Supreme Court said, "We do not believe that UCCJA operates to disable the court which issued the original dissolution and custody decree when neither party objects to its jurisdiction." *Id.* at 520.

Other courts have treated the issue of jurisdiction under the UCCJA differently, however. For instance, in *Elbert v. Elbert*, 833 S.W.2d 884, 887 (Mo.App. E.D.1992), the court said:

The trial court's jurisdiction under §§ 452.440—452.550, to hear a custody determination is often characterized as jurisdiction of the subject matter. Subject matter jurisdiction may be raised at any time, may not be waived, and may not be conferred by consent of the parties. The circumstances upon which the trial court bases its jurisdiction must exist at the time the jurisdiction of the court is invoked. Though not raised by a party, subject matter jurisdiction may be examined by this court sua sponte. (citations omitted).

In *State ex rel. Laws v. Higgins*, 734 S.W.2d 274, 279 (Mo.App. S.D.1987), this Court made an extensive review of the question of jurisdiction in a case involving the UCCJA. We recognized that "jurisdiction" to adjudicate a controversy falls into three categories: (1) jurisdiction of the subject matter; (2) jurisdiction of the res or the parties; and (3) jurisdiction to render the particular judgment in the particular case. It was noted that the authority of a court under the UCCJA to hear a particular custody case is often characterized as jurisdiction of the subject matter which may not be established by the voluntary submission of the parents, which cannot be waived, and which may be raised at anytime. *Id.* While a circuit court has jurisdiction over custody determinations generally, the issue of whether it has jurisdiction to hear a particular motion to modify is an issue of jurisdiction over a particular custody determination. *Id.* We cited with approval the following language from *State ex rel. Lambert v. Flynn*, 348 Mo. 525, 154 S.W.2d 52, 57 (1941):

... the third essential, jurisdiction to render the particular judgment in the particular case (sometimes called 'competency'), partakes of the character of one or the other of the first two. Where the lacking element of jurisdiction goes to the personal privilege of the litigant, it may be waived. But when it depends on the power of the court under a public policy established by statute or otherwise, it cannot be waived.

---

**3.** It also cited cases such as *Dobbs v. Dobbs*, 838 S.W.2d 502 (Mo.App. E.D.1992), and *Newton v. Newton*, 811 S.W.2d 868 (Mo.App. E.D.1991), which hold that where a custody decree is entered in Missouri, and the child and parent move to another state, Missouri continues to have jurisdiction to hear subsequent custody and visitation matters so long as one parent continues to reside in Missouri.

*Id.* See also *Miller v. Robinson,* 844 S.W.2d 574, 578 (Mo.App. W.D.1992), where the court said that a parent's voluntary appearance in a child custody case establishes the court's jurisdiction over the parent, but does not grant the court jurisdiction of the subject matter.

■ We are, however, constitutionally bound to follow the last controlling decision of the Missouri Supreme Court. Mo. CONST. Art. V, § 2; *State v. Wilson,* 795 S.W.2d 590, 591 (Mo.App. S.D.1990). Accordingly, we are constrained to hold, pursuant to *Brown,* that the trial court had jurisdiction.

In her second point relied on, Mother claims that the trial court erred in awarding custody to Father because he failed in his burden of establishing a substantial and continuing change of circumstances since the initial custody award, and he also failed to establish that a change of custody would serve the best interests of B.H. In essence she argues that the judgment was not supported by substantial evidence. We agree.

■ Appellate review of this case is pursuant to Rule 73.01. *Smith v. Smith,* 839 S.W.2d 382, 383 (Mo.App. S.D.1992). Accordingly, we are to affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

■ Section 452.410.1 provides, in pertinent part:

... the court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

When custody has been once adjudicated, it is presumed that the custodian remains suitable and the burden of proving a change of circumstances justifying a change of custody is on the party seeking the change. *In re*

*Marriage of D.L.(B.)M.,* 783 S.W.2d 473, 474 (Mo.App. S.D.1990). The change of circumstances required by § 452.410.1 relates to the circumstances of the child or the custodian. *Nichols v. Ralston,* 929 S.W.2d 302, 305 (Mo. App. S.D.1996). The necessary change of circumstances must be significant before a child custody decree may be modified. *D.L.(B.)M.,* 783 S.W.2d at 474–75.

B.H. was a premature baby, weighing one pound, twelve ounces, who remained in the hospital for two months following her birth. She has experienced breathing problems; had pneumonia three times, each of which required hospitalization; and had tubes surgically placed in her ears because of recurrent ear infections. At the time of trial, B.H. was two years, four months old and weighed 21 pounds. Mother testified that B.H. was doing much better physically, but that she had a speech impairment and was developmentally disabled. Because of that condition, Mother had made arrangements for her to receive speech therapy and special education through the Head Start Program in an effort to prepare her for a timely start in kindergarten. She further testified that pursuant to a Colorado doctor's recommendation, B.H. ate six to seven times per day because she ate very little each time and, as a result, was unable to receive enough nutrition by eating three meals per day. Father, on the other hand, testified that he did not believe that B.H. had any continuing health problems other than "low birth weight." He did acknowledge that she had some speech problems, however, by saying that she "just kind of mumbles."

Mother's move to Colorado was pursuant to authority granted by the court when the marriage was annulled and custody was awarded to her in July 1996. Father filed the motion to modify in April 1997, and the case was tried in September 1997. Between the time of the custody award in 1996 and the trial in 1997, Father had seen his daughter four times: B.H. was in Missouri for two weeks after the original custody award; Mother came back with B.H. in September 1996 when she was charged with stealing in Missouri;[4] Father went to Colorado in Feb-

---

4. The record does not reflect the specifics of the

offense with which Mother was charged, but

ruary 1997 when B.H. had surgery to place drains in her ears because of chronic ear infections, and he was able to be with her for two days after she got out of the hospital; and B.H. came to Missouri with Father's mother, who also resides in Colorado Springs, to attend the wedding of Father's sister, and was here for approximately eighteen days.

At the time of trial, Mother was living with her boyfriend and B.H. in Colorado Springs. She testified, without objection, that in Colorado a common law marriage can be established in six months, and that she considers her boyfriend as her common law husband. The evidence was that her boyfriend had no criminal record and was employed. Other than that, there was no evidence concerning this relationship or its possible impact on B.H.

Father previously drove a truck, but at the time of trial he was working at a car wash in the evenings in addition to doing heating and air conditioning odd jobs. He testified that he had a monthly income of $840, but had bills of over $950. His monthly bills included $205 as support for another child. Mother testified that she was employed in an assisted living facility for the elderly earning approximately $825 per month. Mother also received Supplemental Security Income (SSI) for B.H. because of her prematurity and low birth weight. Although Father was ordered to pay child support of $150 per month in the original custody decree, he had not done so, contending that he was relieved of that responsibility because of the SSI payments.

■ In his motion to modify, Father alleged the following "continuing and substantial changed circumstances": (a) Mother had moved to Colorado and had not provided a stable home environment for the child; (b) Mother had denied Father reasonable visitation with the child; (c) the child received an adequate government disability income, and did not need child support from Father; and (d) "it would be in the best interest of the child to reside with the [Father], or in the alternative, for the child to have specific visitation with the [Father]. The trial court did not specifically state the basis for its judg-

ment modifying custody, finding only that, since the original custody award, there had "been changed circumstances of the child and her custodian so substantial and continuing that the best interest of the child requires a modification of the custody, visitation and support terms of the original Decree." The court was not, however, required to state what it found to be the change of circumstances, if the evidence was sufficient to support a finding that such a change occurred. *Baumgart v. Baumgart,* 944 S.W.2d 572, 576 (Mo.App. W.D.1997). We have searched this record in an effort to determine if there was sufficient evidence to support this judgment. We have concluded that there was not.

■ With reference to Father's allegation that Mother moved to Colorado and did not provide a stable home environment for the child, we note that she moved with specific approval of the trial court. It was obvious from the evidence that Mother had been responsive and caring with regard to B.H.'s health needs. The only evidence which could possibly be viewed as going to the quality of the home environment provided by Mother was the fact that, as of the time of trial, she was living with a man to whom she was not married. Aside from the lack of marriage (which we do not unduly discount), there was no evidence to suggest that this relationship was such that it was detrimental to B.H. The evidence was that Mother had known the man with whom she was living for over a year, he was employed, he had no criminal record, and he stayed with B.H. when Mother was working. While the moral fitness of a parent is a vital factor in making custody determinations, any immoral behavior must affect the child and its welfare before it is relevant for purposes of a transfer of custody. *Shoemaker v. Shoemaker,* 812 S.W.2d 250, 255 (Mo.App. W.D.1991). As in *Shoemaker,* here there was no evidence to suggest that B.H.'s welfare was being adversely affected by Mother's conduct. *See also Humphrey v. Humphrey,* 888 S.W.2d 342, 346 (Mo.App. E.D.1994).

■ It is also true that Mother had returned to Missouri after the annulment to

does indicate that she received probation.

face an "old" stealing charge, and that she was on probation at the time this case was tried. Father, however, was also on probation for "bad checks." It is obvious that neither parent has led a totally exemplary life. We are unable to conclude, however, that Mother's probationary status on this charge required that B.H.'s custody be transferred to Father who was also on probation.

▪ Father also alleged, and seems to primarily rely on the contention, that Mother had denied him reasonable visitation with B.H. This is also unsupported by the record. It is true that interference with a non-custodial parent's visitation privileges may be considered in determining the welfare of a child. *McCammon v. McCammon,* 680 S.W.2d 196, 202 (Mo.App. W.D.1984). The overriding duty of the court, however, is to serve the best interests of the child. *Id.* It must be remembered that Mother and B.H. moved to Colorado with the approval of the court. In the fourteen months between the original custody decree and the trial of his motion to modify, Father, who was granted reasonable visitation rights, was with the child on four occasions. Although the record is not precise, it appears that most of those occasions involved Father being with B.H. for several days at a time.

In February 1997, while Father was in Colorado, he and Mother apparently had a dispute which resulted in a restraining order being entered against him, which was still in effect at the time of trial. We gather that the restraining order prevented direct contact between Father and Mother and provided that Father's mother, who lived in Colorado Springs, was to be the contact for each of them to communicate with the other concerning B.H. According to Mother, she periodically informed Father's mother about B.H.'s condition and took the child to her house for visits during which time Father was permitted to speak with B.H. by phone. Mother also testified that Father had requested visitation twice, which apparently would have involved B.H. flying to Missouri. Mother refused to permit those trips because of B.H.'s age and condition. Father testified that he had asked for B.H. to fly to Missouri several times. Father presented no evidence, however, about who would be expected to fly with B.H. who was two years, four months old at the time of trial.

There was no evidence that Mother denied Father the opportunity to be with B.H. in Colorado. In fact, she testified that he was welcome to come to Colorado Springs where his mother lived and be with B.H. when he chose. The evidence simply does not support a conclusion that Mother intentionally interfered with reasonable visitation by Father.

Another of Father's allegations was that B.H. received an adequate disability income and, as a result, did not need child support from him. There was no evidence, however, concerning the cost of B.H.'s care or her financial needs at the time of trial as compared with that existing when the original custody decree was entered. Additionally, the disability income (SSI) was being received as of the time of the original custody decree and did not constitute a change of circumstances occurring after that time. The trial court, in its judgment, cancelled and set aside its previous order of child support. We presume that the basis for that portion of the decree was the fact that custody was being changed to Father.

Father also alleged that it was in B.H.'s best interest to reside with him. Again, the evidence does not demonstrate that Father sustained his burden of demonstrating the validity of this allegation. There was no evidence about Father's plans to deal with the health or developmental concerns relating to B.H. He was employed in the evenings at a car wash, earning less than his normal monthly expenses. While he testified that a neighbor would care for B.H. while he was working, there was no evidence about that neighbor, the environment B.H. would be in, or whether Father could afford to pay any associated baby sitting charges.

▪ It is true that the trial court has broad discretion in determining child custody, and that its decision will be affirmed unless the appellate court is firmly convinced that the welfare of the child requires a different disposition. *P.L.W. v. T.R.W.,* 890 S.W.2d 688, 690 (Mo.App. S.D.1994). The polestar guiding the resolution of custody

disputes, however, is the best interests of the child. *In Interest of K.K.M.*, 647 S.W.2d 886, 892 (Mo.App. E.D.1983). Once custody has been adjudicated, it should be transferred only where the change of circumstances is such that the welfare of the child requires it. *Downey v. Downey*, 696 S.W.2d 336, 337 (Mo.App. S.D.1985). The change in circumstances must be such as to give a definite promise that the custody change will substantially benefit the child. *Id.*

There must be an evidentiary basis to support a finding of a change of circumstances which gives the trial court jurisdiction to consider making a change of custody. *McCreary v. McCreary*, 954 S.W.2d 433, 439 (Mo.App. W.D.1997). Even if there is some showing that a change of circumstances has occurred, the change must be significant before a child custody decree may be modified. *Id.* If the evidence wholly fails to demonstrate a change in circumstances, there can be no change of custody which is in the best interests of the child. *Id.*

We have thoroughly searched the record in this case and are unable to conclude that evidence was presented to the trial court which, under the above standards, would support a change of custody. *See Sumnicht v. Sackman*, 906 S.W.2d 725, 727–29 (Mo.App. W.D.1995); *Humphrey*, 888 S.W.2d at 345–46. We are especially concerned that a small child, now approximately three and one-half years old, has already been once uprooted from her familiar surroundings, and a reversal will require yet another significant change. For appellate review to have meaning, however, we must decide issues such as this based on the applicable standards of review and not by total deference to the trial court's judgment. We are convinced that Father, as the moving party, did not sustain his burden of demonstrating that the best interests of B.H. required the custody change ordered by the trial court.

The judgment of the trial court modifying the original decree is reversed, and the cause is remanded to the trial court with directions to enter judgment reinstating the prior judgment which granted Mother custody of B.H., granted Father reasonable visitation privileges, and ordered Father to pay child support in the amount of $150 per month. The judgment to be entered on remand shall abate the judgment against Father for $150 per month child support between the date of the judgment modifying the original custody decree, and the date of the mandate issued as a result of this appeal.

