Jackie Lee JONES, Appellant,

v.

Amy Elizabeth JONES, Defendant,

and

Betty Ward, Respondent.

No. WD 56541.

Missouri Court of Appeals, Western District.

Dec. 7, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2000.

Karen M. Hunt, Sedalia, for appellant.

Max E. Mitchell, Sedalia, for respondent.

Before: ULRICH, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

Jackie Lee Jones (the father) appeals the judgment of the Circuit Court of Pettis County modifying its decree dissolving his marriage to Amy Elizabeth Jones (the mother), by changing the legal custody of their son, Caleb Lee Jones (Caleb), from the father and mother and his physical custody from the mother to the respondent, Betty Ward, Caleb's maternal grandmother (the grandmother).

In his sole point on appeal, the father claims that the trial court erred in modifying its prior custody decree by awarding sole legal and physical custody of Caleb to the grandmother because, in doing so, the court misapplied the law, and its order was against the weight of the evidence.

We affirm.

## Facts

Jackie Lee Jones and Amy Elizabeth Jones were married in January 1986. Their son, Caleb, was born on May 10, 1986. On July 21, 1988, the marriage was dissolved by decree of the Circuit Court of Pettis County, Missouri.

Pursuant to the court's decree, the father and mother were awarded joint legal custody of Caleb, with primary physical custody to the mother, provided that she continued to live in her parents' home. The court found that both parents had engaged in inappropriate and illegal behavior and that Caleb was being properly cared for in large part due to the influence of the mother's parents, especially the grandmother, Betty Ward. In order to move from her parents' home, the mother was required to file a written request with the court asking permission and provide a copy of that request to the father. The father was awarded reasonable visitation rights with Caleb, and was required to pay child support and maintain health insurance for him.

After her marriage was dissolved, the mother lived sporadically in her parents' home, while the grandmother provided support and care for Caleb. The grandmother oversaw his educational and social development, as well as taking care of all of his health needs. Caleb was diagnosed as having Attention Deficit Hyperactivity Disorder (ADHD) and began taking medication for the condition. The father testified that he was wary of Caleb's medication and expressed that alternatives should be explored in dealing with his condition. As a result of the grandmother's day-to-day supervision and care of Caleb, a very close and loving bond developed between them such that he thought of her as his mother. During this time, the father frequently exercised his visitation rights and also bonded with Caleb. In fact, Caleb testified that he loved his father and did not want to lose him.

Sometime in 1995, the mother's boyfriend, Dwight D. Smith, moved into the grandmother's residence. On October 10, 1995, the mother gave birth to Caleb's half-brother, Nathan M.P. Smith. On October 22, 1997, the grandmother petitioned for and received letters of guardianship for Nathan in the Circuit Court of Pettis County. In her petition, she alleged that Nathan's parents were unfit to serve as custodians in that his father was incarcerated and his mother was leading a lifestyle not suitable for custody of the child and was leaving him for extended periods of time with her to provide for his care and supervision. The grandmother did not petition for a guardianship as to Caleb nor did she advise Caleb's father as to the proceeding with respect to Nathan.

On November 26, 1997, the father filed a motion to modify the court's dissolution decree requesting a change of legal and physical custody to him, alleging that a substantial and continuing change had occurred in the mother's circumstances, specifically that she was not living with her parents and was continuing to engage in narcotic activities. The grandmother filed

a motion to intervene in the case on December 26, 1997, and a motion to modify custody to her on January 21, 1998, also alleging that a substantial and continuing change of the mother's circumstances had occurred and that Caleb's best interests would be served by awarding her sole legal and physical custody.

The grandmother's motion to intervene was allowed over the father's objection. The trial court heard evidence on the parties' motions to modify on September 24, 1998. The court sustained the grandmother's motion on two stated grounds: (1) it found that the father would not pay proper attention to Caleb's ADHD condition; and (2) it found that Caleb had bonded with the grandmother and that he treated her as his mother, such that it would not be in his best interests to remove him from the grandmother's home.

This appeal follows.

### Standard of Review

Our standard of review in a modification of custody case is governed, as in other judge-tried cases, by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. *banc* 1976), interpreting what is now Rule 73.01(c).[1] *McCreary v. McCreary,* 954 S.W.2d 433, 438–39 (Mo. App.1997). Under this standard, we will affirm the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.; Reeves–Weible v. Reeves,* 995 S.W.2d 50, 55 (Mo.App.1999); *Rogers v. Rogers,* 923 S.W.2d 381, 383 (Mo.App. 1996). "Because the trial court is in the best position to weigh all the evidence and render a judgment based on the evidence, the judgment is to be affirmed under any reasonable theory supported by the evidence." *Guier v. Guier,* 918 S.W.2d 940, 946 (Mo.App.1996) (citation omitted).

In reviewing an order modifying child custody,

[a] great deal of caution should be exercised in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence, and only then upon a firm belief that the judgment of the trial court was incorrect. In child custody matters the trial court's determination must be given greater deference than in other cases.

*Id.* (citations omitted). We will view the evidence in the light most favorable to the decision of the trial court. *McCreary,* 954 S.W.2d at 439. "When there is conflicting evidence, the trial court has the discretion to determine the credibility of the witnesses, accepting or rejecting all, part, or none of the testimony it hears." *Guier,* 918 S.W.2d at 946.

### I.

In two subpoints of his sole point on appeal, the father claims that the trial court erred in modifying its prior custody decree by awarding sole legal and physical custody of Caleb to the grandmother because: (1) in doing so, it misapplied the law; and (2) its order was against the weight of the evidence. In claiming that the circuit court misapplied the law in modifying its custody decree, the father contends that the court misapplied §§ 452.410.1[2] and 452.375.5(5)(a). Specifically, he contends that the trial court was required to apply the "parental presumption," found in § 452.375.5(5)(a), and failed to do so such that its award of custody to the grandmother misapplied the law of this statute.

Section 452.410 governs the modification of a custody decree. It sets forth the standard which must be met before the trial court can modify its decree with respect to its provisions concerning the cus-

---

1. All rule references are to the Missouri Rules of Civil Procedure (1998), unless otherwise indicated.

2. All statutory references, except to § 452.375, are to RSMo 1994, unless otherwise indicated. All references to § 452.375 are to RSMo Supp.1998, unless otherwise indicated.

tody of a minor child. *McCreary*, 954 S.W.2d at 439. Section 452.410.1 provides, in pertinent part:

> the court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

"A finding of changed circumstances under this section, is 'a precursor to a finding that the best interests of the child necessitate a modification of a prior custody decree....'" *McCreary*, 954 S.W.2d at 439 (*quoting Guier*, 918 S.W.2d at 947). There is no dispute on appeal as to there being a change of circumstances sufficient to support modification of custody under § 452.410.1. Both the father, as the movant, and the grandmother, as the intervenor/movant, sought a change of custody below, alleging that there was a substantial and continuing change in the circumstances of the mother necessitating a change in Caleb's custody. For her part, the record does not reflect whether the mother filed an answer to the father's or grandmother's motion to modify. Further, although she did appear *pro se* at the hearing on the motions of the father and grandmother, she did not testify and does not appeal from the trial court's decree of modification. Thus, the only dispute on appeal is over who should have custody, the father or the grandmother.

In its voluntary findings on the record at the close of the hearing, the trial court stated that the

> original decree [made] a finding that both parents engaged in inappropriate and illegal behavior. And that finding caused the Court to believe that there was no suitable parental custodian. And the law required that a third party could not have custody unless that third party

were actually a party in the lawsuit. And so the Court fashioned a relief which put this child with Betty Ward [the grandmother]. And that was because of the misconduct of both parties.

With respect to the court's statement that the law at the time of the father and mother's dissolution required the joinder of a third party receiving custody, § 452.375.5(5)(a) presently requires, *inter alia,* that: "Before the court awards custody, temporary custody or visitation to a third person under this subdivision, the court shall make that person a party to the action." The version of the statute which went into effect on August 13, 1988, shortly after the entry of the decree on July 21, 1988, also required joinder. § 452.375.4(3)(a), RSMo Supp.1988. However, the version of the statute in effect at the time the dissolution decree was entered did not. With respect to third-party custody, it provided simply that the trial court could award it "when the court finds that each parent is unfit or unable, and that it is in the best interest of the child." § 452.375.3, RSMo 1986. In addition to there being no express statutory requirement to join a person receiving third-party custody at the time the decree was entered, our research does not disclose any case law expressly requiring it. Thus, although the trial court was obviously under the impression that it was required, by law, at the time of dissolution to make the grandmother a party to the action in order to award her custody, it is not clear that it was.

Whether the trial court was, as it believed, actually required to join the grandmother as a party to award her third-party custody at the time of dissolution, it obviously did not do so. Rather than follow what it believed to be the law necessary to reach the result it found was supported by the evidence, an award of custody to the grandmother, by its own candid admission, the trial court "fashioned a relief which put [Caleb] with [the grandmother]," that relief being an award of sole physical custo-

dy to the mother, which award was conditioned on her living with the grandmother. In fact, the court went so far as to order that: "[The mother] is ordered to file a written request with the Court for permission to move if she desires to leave the home of her parents and is ordered to furnish a copy of that request to [the father]." There can be no mistake from the statements and orders of the trial court that its intent was to place Caleb in the physical custody of the grandmother, regardless of what it understood the law to be prohibiting it from doing so without first joining her as a party.

The fact that the trial court was willing to "fashion a result" that technically complied with the law, as it believed it to be, but in its practical effect was contrary, is troubling, compelling us to comment. First, as a general comment, a trial court, simply because it perceives a law to be an obstacle to a desired result, should not be in the business of creatively "fashioning" results that technically comply with the law, but, in practical effect, do not. Second, as a specific comment on the law under discussion here, the present statutory requirement that a person be joined as a party in order to receive third-party custody is not a mere technicality that should be viewed by the court as being insignificant and subject to avoidance by the creative fashioning of a desired result. This is so in that the failure to join a third party, but "fashioning" a result that in effect awards physical custody to that party, would deny the parents their constitutional due process rights because it denies them the opportunity to present evidence challenging the suitability of the third party as a custodian. *Burton v. Burton,* 874 S.W.2d 461, 464 (Mo.App.1994). In summary, as to this issue, we would caution trial courts from engaging in the future in this type of creative "fashioning" of results to avoid the effects of controlling law, es-

pecially cases involving the custody of children.

Although the record reflects that the trial court's intent was to insure that Caleb was placed physically with the grandmother, the fact remains that its original custody decree awarded joint legal custody to the mother and father and sole physical custody to the mother. As such, this case does not involve the changing of physical custody of a child from a third-party custodian, but the changing of physical custody from a natural parent. This fact is significant in that it determines whether the parental presumption found in § 452.375.5(5)(a) would apply, as contended by the father. *Flathers v. Flathers,* 948 S.W.2d 463, 466–67 (Mo.App.1997) (*citing In re Marriage of Carter,* 794 S.W.2d 321, 327 (Mo.App.1990)).

Although not directly deciding the issue, this court in *Flathers* recognized that there was authority for the proposition that the "parental presumption," found in what was then § 452.375.5(3), RSMo Supp. 1995, but is now § 452.375.5(5), RSMo Supp.1998, did not exist in a modification proceeding between a movant/noncustodial parent and a third-party custodian.[3] *Flathers,* 948 S.W.2d at 467. The primary rationale for this proposition being that the circumstances of the noncustodial parent, which would logically encompass the essence of the parental presumption, are not relevant in a § 452.410.1 modification proceeding in determining, as a precursor to the trial court establishing its jurisdiction to modify custody, *McCreary,* 954 S.W.2d at 439, whether there had been a substantial and continuing change in the circumstances of the child or the *custodian. Flathers,* 948 S.W.2d at 467. Recently, in *Searcy v. Seedorff,* No. WD 55928, slip op. at 8–9, 1999 WL 428004 (Mo.App. May 18, 1999), this court, citing *McCreary* and *Flathers,* specifically held that the parental presumption did not exist in a modi-

---

**3.** While the *Flathers* court correctly applied and quoted from the 1995 version of § 452.375, it incorrectly cited the statute as the 1994 version. *Flathers,* 948 S.W.2d at 466.

fication of custody proceeding under § 452.410.1 involving a third-party custodian. *Searcy,* however, has been transferred to the Missouri Supreme Court, pursuant to its order. In any event, we need not concern ourselves with the ultimate resolution of the issue addressed in *Searcy* in that our case does not involve a change from a third-party custodian.

In this modification proceeding, we are presented with a noncustodial parent and a noncustodial grandparent both seeking, in a § 452.410.1 modification proceeding, a change of custody from a custodial parent. As such, there is presented a dispute for custody in a modification proceeding between multiple movants consisting of a noncustodial parent and a noncustodial third party calling into play § 452.375.5(5), which, giving the language used in the statute its plain and ordinary meaning, *State ex rel. Riordan v. Dierker,* 956 S.W.2d 258, 260 (Mo. *banc* 1997), we interpret as applying in any case in which the trial court is called upon to decide whether to award custody *to* a third party rather than a parent, as in this case, as opposed to changing custody *from* a third party, who has previously been awarded custody by the trial court in compliance with § 452.375.

"'Third party custody' means a third party designated as a legal and physical custodian pursuant to subdivision (5) of subsection 5 of this section." § 452.375.1(4). With respect to third-party custody, § 452.375.5 provides, in pertinent part, that:

> Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows:
>
> . . .
>
> (5) Third-party custody or visitation:
> (a) When the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interests of the child, then custody, temporary custody or visitation may be awarded to any other person or persons deemed by the court to be suitable and able to provide an adequate and stable environment for the child.

We read the unambiguous language of [§ 452.375.5(5)(a) ] as creating a rebuttable presumption that parents are fit, suitable, and able custodians of their children and that their welfare is best served by awarding their custody to their parents. Stated another way, natural parents are not to be denied custody of their minor children, unless the third party seeking custody first carries its burden of showing that each parent is unfit, unsuitable, or unable to have custody or that the welfare of the children requires it.

*Flathers,* 948 S.W.2d at 466. Thus, under § 452.375.5(5)(a), the grandmother, to be entitled to custody, was required to rebut the parental presumption in favor of the father, as he contends on appeal. The question is whether the trial court's decision in awarding custody to the grandmother applied this presumption as required by law.

As to rebutting the parental presumption, we glean from § 452.375.5 that rebuttal occurs "[w]hen the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interest of the child." § 452.375.5(3)(a). The statute creates two bases for rebutting the presumption, the "fitness" basis and the "welfare" basis.

*Flathers,* 948 S.W.2d at 469. If either the fitness or welfare basis is shown, the statute then requires that the trial court determine whether it is in the best interests of the child to award custody "to any other person or persons deemed by the court to be suitable and able to provide an adequate and stable environment for the child." § 452.375.5(5)(a). As such, if the presumption is not rebutted by proof of either the fitness or welfare basis, the

question of the child's best interests is never reached.

In the case at bar, the grandmother did not plead or prove, or assert on appeal, nor did the trial court find, that the father, at the time of the modification hearing, was "unfit, unsuitable, or unable to be a custodian." § 452.375.5(5)(a). In fact, a review of the record indicates that it would support a contrary finding. Thus, before the trial court here could award custody to the grandmother, it first had to find that she had rebutted the parental presumption in favor of the father by pleading and proving the "welfare" basis found in the statute, that Caleb's welfare required an award of third-party custody.[4]

■ The statute does not define "welfare" in the context of rebutting the parental presumption. Consequently, in resolving the issue presented, we can presume that the term was intended by the legislature to have the meaning understood pursuant to the common law. *Pharmflex, Inc. v. Division of Employment Sec.*, 964 S.W.2d 825, 830 (Mo.App.1997). Numerous cases, not involving third-party custody, have referred to the "welfare" of the child being tantamount in making custody determinations where third-party custody is not involved. In doing so they have equated the concept of "welfare" with the required "best-interests" finding of § 452.375.2, governing custody disputes between parents. *See, e.g., Bell v. Bell*, 987 S.W.2d 395, 401 (Mo.App. E.D.1999) (stating that "[w]e will affirm the court's determination of custody unless we are firmly convinced the welfare of the child requires some other disposition"); *Holden v. Holden*, 977 S.W.2d 951, 957 (Mo.App.

S.D.1998) (stating that the trial court's "decision will be affirmed unless the appellate court is firmly convinced that the welfare of the child requires a different disposition"); *Chapin v. Chapin*, 985 S.W.2d 897, 902 (Mo.App. W.D.1999) (stating that "absent manifest error, we will not disturb the trial court's determination of custody unless the welfare of the child demands a different result"). However, for the reasons discussed, *infra*, we find that with respect to its usage in § 452.375.5(5)(a), the term "welfare" is not to be treated as the equivalent of "best interests."

"Welfare," in the context of § 452.375.5(5)(a), means something other than "best interests." We know this to be true from the language of the statute which requires the trial court, in order to award third-party custody, to find that a "parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, *and* it is in the best interests of the child." § 452.375.5(5)(a) (emphasis added). Giving the word "and," its plain and ordinary meaning, its use in conjoining the required findings of either the "fitness or welfare basis" with a best-interests finding reflects a legislative intent that the finding of "best interests" is to be in *addition* to the required finding of either the "fitness" *or* the "welfare" basis, discussed *supra*, and thus, that the "welfare" finding is separate and distinct from the "best-interests" finding. Further, if the legislature had intended that the "welfare" and "best-interests" finding were to be treated as one in the same, it would not have included the word "welfare" in the section. *See Spradlin v. City of Fulton*, 982 S.W.2d 255, 262 (Mo. *banc* 1998) (stating that every word

4. Although the statute requires, for an award of third-party custody, a best-interests finding in addition to a finding as to either the "fitness" or "welfare" basis, in the case of the former, where the parent is found to be unfit, unsuitable or unable to be the custodian, we fail to see the purpose in conducting such a determination with respect to the parent. Logically, in a case where the parent has been found already to be unfit, unsuitable or un-

able to be a custodian, the parent would be automatically disqualified as a custodian and the best-interests determination would only serve to determine the suitability of the third party as a custodian. In any event, because our case does not involve the "fitness" basis for awarding third-party custody, we are not required and will not address or decide this issue here.

of a legislative enactment must be given meaning).

In addition to the statute's wording demonstrating an intent to treat the two findings as separate and distinct, the legislature's amendment of the statute in 1988 to include the welfare provision, § 452.375.4(3)(a), RSMo Supp.1988,[5] provides further support for the fact that a child's welfare is not to be viewed, for purposes of awarding third-party custody, as being the same as his or her best interests. *Hagan v. Director of Revenue,* 968 S.W.2d 704, 706 (Mo. *banc* 1998) (holding that "[w]hen the legislature amends a statute, the amendment is presumed to have some effect"). Moreover, to equate "welfare" and "best interests," as found in § 452.375.5(5)(a), would work to treat parents and third parties, in an initial determination of third-party custody, as equals, in effect, destroying the parental presumption clearly recognized in the statute. Thus, to the extent that the Southern District of this court has previously held in *R.J.A. v. G.M.A.,* 969 S.W.2d 241, 245 (Mo. App. S.D.1998), that a "best-interests" finding is sufficient to rebut the parental presumption, without first determining if the "fitness or welfare" basis has been met, we choose not to follow it as being an incorrect statement of the law.

■ Prior to the statute's amendment in 1988 to include the "welfare" basis, our appellate courts recognized that, despite there being no finding that the parent was unfit, unsuitable or unable to be the custodian, third-party custody could be awarded if the welfare of the child required it. *In re Marriage of Garner,* 651 S.W.2d 564, 566 (Mo.App.1983) (holding that third-party custody may be awarded if both parents are unfit, incompetent or unable to care for the child, or if the welfare of the child

manifestly requires it); *In re K.K.M.,* 647 S.W.2d 886, 890 (Mo.App.1983) (holding that custody may be awarded to a third party whenever the best interests of the child for some special or extraordinary reason or circumstance mandate such an award, regardless of whether the evidence establishes the unfitness or incompetence of the natural parent); *In re Feemster,* 751 S.W.2d 772, 775–76 (Mo.App.1988) (applying the same rule). The 1988 amendment to the statute, adding the "welfare basis," simply codified the holdings of these cases. *Giesler v. Giesler,* 800 S.W.2d 59, 62 (Mo. App.1990). Thus, under § 452.375.5(5)(a), to rebut the parental presumption of the father on the welfare basis, the grandmother was required to plead and prove "special or extraordinary circumstances, render[ing] it in [Caleb's] best interests that [his] custody be granted" to her. *Flathers,* 948 S.W.2d at 469.

■ Neither party requested findings of fact and conclusions of law under Rule 73.01(a)(3). However, the trial court did find voluntarily on the record, with respect to the basis for its awarding custody to the grandmother, that:

> The evidence is strong and convincing that the child has the ADHD condition which was diagnosed and that [the father] would disregard that and not pay any attention to that.

> The other observation which should be made is that the child considers [the grandmother] to be his mother. And the child very strongly wants to be with [the grandmother]. And it would be highly disruptive to the child to change that.

> The Court thinks that the best result that can happen with regard to this child and in the best interest of the child is

**5.** Section 452.375, RSMo 1986, provided:

3. As between the parents of a child, no preference may be given to either parent in the awarding of custody for the sole reason that the parent is the mother or the father of the child, nor because of the age or sex of the child. The court may award joint physical custody or joint legal custody, or both, to both parents or sole custody to either parent, or, when the court finds that each parent is unfit or unable, and that it is in the best interest of the child, then to a third party.

that custody be transferred to the [grandmother].

Under our standard of review, we, of course, cannot limit ourselves to these voluntary findings of the trial court in determining whether the record supports its award of custody to the grandmother, *Prudential Property and Cas. Ins. Co. v. Cole*, 586 S.W.2d 433, 435 (Mo.App.1979), in that, where no request is made under Rule 73.01(a)(3) for findings and conclusions, all the fact issues presented are to "be considered as having been found in accordance with the result reached," Rule 73.01(a)(3), and we will uphold the judgment under any reasonable theory presented and supported by the evidence. *Jordan v. Stallings*, 911 S.W.2d 653, 659 (Mo.App.1995) (*citing Kueffer v. Brown*, 879 S.W.2d 658, 661 (Mo.App.1994)). Although we cannot limit ourselves to the trial court's voluntary findings and conclusions in determining whether it erred in awarding custody to the grandmother, they still may be considered for this purpose. *Colombo v. Buford*, 935 S.W.2d 690, 693 (Mo.App.1996).

▇▇ With the foregoing principles to guide us as to the trial court's finding with respect to the father's refusal to give proper attention to Caleb's ADHD condition, we agree with the father's contention that the record simply does not support it. The only evidence on the issue of whether the father would provide proper attention to Caleb's diagnosed condition of ADHD essentially comes from him, who testified that before he would agree to medicate Caleb for this condition, he would first have to determine if there were any suitable alternatives. In our view, it could not reasonably be inferred from this that the father would not be willing to give proper attention to Caleb's ADHD condition, as found by the trial court.

▇▇ As to the trial court's other stated basis for awarding custody to the grandmother, Caleb's significant bonding with her,

our appellate courts, including this court, have held that a significant bonding familial custody relationship with third parties can constitute a special or extraordinary reason or circumstance rendering it in a child's best interests to award third-party custody. In so holding, the courts do not hold that every third-party custodial relationship will automatically rebut the parental presumption rendering it in the best interests of the child that third-party custody be awarded. Each case must turn on its own facts.

*Flathers*, 948 S.W.2d at 470 (citations omitted).

In holding that a significant bonding familial custody relationship with third parties is sufficient to rebut the parental presumption, the courts have recognized that the removal of children from their present home can, in some circumstances, be so traumatizing as to cause irreversible harm to the children's mental and physical development. Thus, it is logical that changes in custody, including third-party custody, are not favored by the courts.

*Id.* (citations omitted).

A careful review of the record indicates that there was sufficient evidence from which the trial court could reasonably find that Caleb had bonded with the grandmother over essentially his entire life, approximately twelve years at the time of hearing, such that he viewed her as his mother. The evidence favorable to the trial court's decision in awarding custody to the grandmother reflected that she essentially performed all the day-to-day parenting tasks, with little or no assistance from the mother. Caleb, understandably, expressed great love for her and his desire to remain in her custody. Under these circumstances, we cannot say that the trial court was wrong in finding that to remove Caleb from the grandmother's custody could significantly harm him emotionally by upsetting the long-time stability he had known while being in his grandmother's physical custody. The totality of these

circumstances, would, in our view, constitute extraordinary circumstances sufficient to allow the trial court to find that the grandmother had rebutted the parental presumption in favor of the father on the "welfare basis," as provided in § 452.375.5(5)(a) for an award of third-party custody.

In finding that the evidence was sufficient to rebut the parental presumption of the father, we would note that the outcome may have been different if the record supported a finding that the grandmother conspired to keep the father in the dark about the mother's absence from the home and her non-existent role in raising Caleb to allow his long-term bonding with her so as to cut off the parental presumption in favor of the father. To allow third-party custody in such a situation would, in effect, be to encourage no-holds-barred third-party custody battles. Such a situation would be especially troubling where, as here, the trial court had gone out of its way to "fashion" a result in the initial custody proceeding so as to effectively place custody of Caleb with the grandmother, as discussed, *supra.* This could give the impression that the grandmother was assisted by the trial court in putting the father in a legal predicament that ultimately led to his loss of custody to the grandmother in the subsequent modification proceeding.

■■■ Inasmuch as the trial court's prior custody decree awarded physical custody to the mother, not the grandmother, it was reasonable for the father, unless otherwise on notice, to assume that Caleb was being raised by his mother, not the grandmother, as ordered, and that there was no change of circumstances in this respect on which to base a modification. This in turn would have deterred the father from seeking a modification of custody, allowing the "bonding clock" to run in the grandmother's favor, setting up her subsequent third-party custody claim on the welfare basis found in § 452.375.5(5)(a). Although we have no quarrel with the fact that significant bonding by a third party with a minor

child should be given great weight in determining if the parental presumption has been rebutted, public policy would require that a parent not be deprived of the parental presumption, where it can be shown that the third party seeking custody created the circumstances of rebuttal through deception or other acts demonstrating unclean hands.

As to whether the grandmother here was guilty of keeping the father in the dark about the mother's presence in the home in order to gain an upper hand in any subsequent custody battles, which the father contends that she was, the record is sufficient for the trial court to have found the contrary. In this respect, the grandmother testified that during several conversations with the father, he indicated that he knew the mother was not residing with the grandmother for significant periods of time and that the grandmother was actually the one raising Caleb. The father admitted at the hearing that he suspected that the mother was only living with the grandmother off and on. The record would also reflect that he was aware of the mother's relationship with Dwight Smith that resulted in a child being born out of wedlock, for whom the grandmother petitioned and received letters of guardianship, and the fact she was raising Caleb's half-brother. From that, it would have been reasonable for the trial court to infer that the father was not being kept in the dark about the circumstances which resulted in the bonding that occurred between Caleb and the grandmother and on which the court ultimately rested its custody decision.

■■■ Having determined that the evidence was sufficient to rebut the father's parental presumption does not end our inquiry. In deciding whether the trial court erred in awarding Caleb's custody to the grandmother, § 452.375.5(5)(a) still requires us to determine whether the evidence was sufficient to establish that it was in Caleb's best interests to award custody to the grandmother. In making

this determination, the trial court is required to look at all relevant factors including those found in § 452.375.2. *Reeves–Weible,* 995 S.W.2d at 63. It is presumed that in making its decision, the trial court properly considered these factors. *Hicks v. Hicks,* 969 S.W.2d 840, 843 (Mo.App. 1998).

As in most cases, the trial court's view of the circumstances affecting Caleb's best interests revolved around credibility calls and whose version of the facts to believe, the father's or the grandmother's. In this respect, it obviously resolved these calls in favor of the grandmother, which it was free to do. *Reeves–Weible,* 995 S.W.2d at 55. In looking at the record and viewing it in a light most favorable to the trial court's decision, *id.* at 55–56, we find sufficient evidence from which the trial court could have found that it was in Caleb's best interests to award his custody to the grandmother, essentially along the same lines that the parental presumption was rebutted. This is so in spite of the fact that the evidence was that the father had turned his life around and had a loving and supportive relationship with his son. As to the grandmother, the record reflects that she had done an admirable job in raising Caleb. The evidence was such that the trial court could have found that all his needs were being adequately met and that he was a well-adjusted young man who was developing appropriately, both mentally and physically. As such, paying great deference to the trial court's decision in awarding custody to the grandmother, *id.,* we cannot say that it was wrong in awarding Caleb's custody to her as being in his best interests.

For the reasons stated, we find that the trial court did not misapply the law in awarding custody of Caleb to the grandmother and that its decision in doing so was not against the weight of the evidence.

Point denied.

**Conclusion**

The judgment of the trial court modifying its decree of dissolution of marriage by changing Caleb's legal custody from the mother and father and his physical custody from the mother to the grandmother is affirmed.

All concur.