Bobbi BYDALEK, Plaintiff,

v.

James P. BRINES and Joyce L. Brines,
Husband and Wife, William L. Gehrs,
Jr., and Betty Jo Gehrs, Husband and
Wife, Defendants–Respondents,

and

Barbara Meeker and David Meeker,
Counterclaim, Defendants–
Appellants.

No. 23264.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 27, 2000.

Jerry L. Reynolds, Reynolds & Company, Springfield, for Appellants.

Kerry D. Douglas, Craig R. Heidemann, Douglas, Lynch, Haun & Kirksey, P.C., Bolivar, for Respondents.

KENNETH W. SHRUM, Judge.

In a non-jury case, the trial court entered a money judgment for "Defendants" on two of their counterclaims against Bobbi Bydalek ("Bydalek").[1] Barbara and David Meeker ("Meekers"), who were ordered joined as parties in this litigation, appeal from that judgment. Meekers' first point has three parts, i.e., that reversible error occurred when the trial court denied Meekers' requests (1) for a continuance, (2) to be excluded from the trial of Defendants' cross-claims against Bydalek, and (3) for a jury. Meekers' second point maintains that real estate documents at issue are ambiguous, and the trial court erroneously interpreted the documents. We affirm.

This case began when Bydalek filed a declaratory judgment suit against Defendants in which she asked the court to decide the parties' respective rights and obligations arising out of a real estate transaction. Defendants responded by filing a multi-count counterclaim against Bydalek. On June 5, 1996, the trial court entered a summary judgment that decided issues adversely to Bydalek on her declaratory judgment suit and Count I of Defendants' counterclaim. Specifically, the trial court held Bydalek's option to repurchase the subject property from Defendants had expired September 12, 1995, and Bydalek had no further right, title, or interest in the land. This court affirmed that judgment in *Bydalek v. Brines,* 947 S.W.2d 135 (Mo.App.1997) (*"Brines I"*).

On February 28, 1997, while *Brines I* was pending before this court, Defendants filed a "Motion to Join Additional Parties." Specifically, Defendants moved for an "order joining Barbara and David Meeker as parties." At the time, the only unresolved claims were Defendants' counterclaims, specifically, their suit for slander of title (Count II), suit for interest allegedly due Defendants from Bydalek under an "Addendum to Real Estate Purchase Agreement" (Count III), and a declaratory judgment action relating to another potential obligation of Bydalek to pay interest under the "Addendum" (Count IV).[2] To support their joinder request, Defendants alleged, *inter alia:*

"6.  On September 12, 1994, Defendants executed a [$350,000] promissory note ... to ... Bydalek."

. . . .

"7.  [I]n June 1995 ... Meekers allegedly purchased the $350,000 note from ... Bydalek for $100,000.

"8.  Defendants' obligation to pay the ... note to ... Bydalek was, and is, subject to offset for amounts due from ... Bydalek to Defendants under an 'Addendum to a Real Estate ... Agreement Dated March 16, 1994.' ('Addendum')."

. . . .

"9.  The Meekers have demanded payment on the note from Defendants.

"10.  The Meekers' right to payment under the promissory note is subject to all lawful defenses vested in Defendants against ... Bydalek.

"11.  Furthermore, upon information and belief, the Meekers are not bona fide purchasers of the note.

"12.  Defendants have no adequate remedy at law.

"13.  Pursuant to Rule 87.04, the Meekers have or claim an interest which

---

1.  Our designation of "Defendants" refers to James P. Brines and Joyce L. Brines, husband and wife, and William L. Gehrs Jr., and Betty Jo Gehrs, husband and wife.

2.  Details of the real estate transaction and descriptions of the contract documents may be found in *Brines I* and are only repeated here when required to understand the issues presented.

would be affected by the pending declaratory judgment action.

"14. Pursuant to Rule 52.04, in the Meekers' absence, complete relief cannot be accorded among those already parties. The Meekers claim an interest relating to the subject of the action and is so situated that the disposition of the action in their absence may: (a) as a practical matter impair or impede their ability to protect that interest, or (b) leave ... Defendants, already parties, subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the Meekers' claimed interest."

On March 6, 1997, the trial court sustained Defendants' motion to add Meekers as parties.[3] Next, on June 24, 1997, Meekers filed a motion seeking their dismissal from the suit. Defendants filed the next pleading on June 27, 1997. It was denominated "CROSS–CLAIM BY DEFENDANTS ... AGAINST [MEEKERS]." Defendants' cross-claim concluded with this prayer for declaratory judgment relief:

"WHEREFORE, Defendants pray this Court enter judgment declaring the rights of the parties in the aforementioned [$350,000] promissory note, declaring that ... Meekers are not bona fide purchasers of the note, declaring that ... Meekers' rights in the note are subject to all defenses, offsets, and rights which Defendants ... could have asserted against ... Bydalek, and for such other relief as the Court deems just and proper."

On July 8, 1997, Meekers sought dismissal of Defendants' "cross-claim," alleging it failed to state "a claim against [Meekers] upon which relief can be granted and wholly fails to state sufficient facts to constitute a cause of action against [Meekers]."

On March 17, 1999, the trial court overruled all of Meekers' motions to dismiss. However, the Court treated Meekers' July 8, 1997, motion as a "Motion for More Definite Statement" and ordered Defendants "to amend Cross Claim Paragraphs 9, 13, and 14 to state specific facts." Continuing, the court's March 17, 1999, docket entry recited:

"On oral motion of [Defendants'] attorney, Court bifurcates issues on Counterclaim against Plaintiff from issues against ... Meeker[s].... Jury trial waived on Counterclaim. Clerk to notify ... Bydalek when address received from Atty. Luna. Defendants ... to amend Cross claim within 30 days."

By June 28, 1999 (trial date), Defendants had amended their cross-claim and Meekers had moved to "continue the trial against ... Bydalek ..., or in the alternative to exclude ... Meeker[s] from such trial and order that such trial shall not be res judicata or have any collateral estoppel effect upon [Meekers]." During the pretrial conference on June 28, 1999, the trial court ruled Defendants could file a second amended cross-claim against Meekers if filed within twenty days. Also, the trial court overruled Meekers' motion for continuance and their request for "exclusion" from the case against Bydalek.

As a final pre-trial matter, Meekers objected to going to trial without a jury. Repeatedly, Meekers asked for a jury, explaining their reasons therefor and pointing out they had always insisted on a jury trial on any issue that was relevant to them. Meekers asserted that resolution of the issues between Bydalek and Defendants was relevant to Meekers, in that, if Bydalek prevailed then Defendants had nothing to offset against the $350,000 note

3. Defendants sought joinder of Meekers as "parties plaintiff." The trial court merely sustained the joinder motion without designating Meekers' status. Even so, the trial court and the parties themselves have consistently referred to Meekers as "defendants." Because of the peculiar circumstances, however, the more appropriate designation of Meekers is "counterclaim defendants."

allegedly held by Meekers. Alternatively, Meekers argued for an interpretation of the Addendum, which if correct, would mean Bydalek only owed $185,000 to Defendants. Under such an alternative interpretation of the Addendum, Defendants' offset ($185,000) would be less than the $350,000 balance allegedly owed by Defendants on the promissory note assigned by Bydalek to Meekers. Continuing, Meekers voiced concern that when the cross-claims between Defendants and Meekers were tried, Defendants would invoke principles of collateral estoppel or res judicata to preclude Meekers from challenging the amount of Defendants' claimed offset.

Despite these arguments, the trial court denied Meekers' request for a jury to hear the counterclaims against Bydalek. The trial court's explanation was that Meekers could later have a jury hear the cross-claims between Defendants and them. The case was tried to the court with Meekers participating by cross-examining Defendants. On September 1, 1999, the trial court entered judgment for Defendants and "against ... Bydalek on Counts III and IV of their counterclaim" for $1,119,-163.35. Meekers appeal from that judgment.

■ Preliminarily, we address Defendants' argument that Meekers are not "aggrieved" by the judgment from which Meekers appeal. Fundamental to the right of appeal is that the party be aggrieved by the judgment from which he or she appeals. *Gibbs v. McClain*, 964 S.W.2d 850, 851[2] (Mo.App.1998). This follows because the right to appeal in Missouri is statutory, *In re Interest of A.H.*, 963 S.W.2d 374, 377 (Mo.App.1998), and the applicable statute confers the right of appeal only upon a "party to a suit *aggrieved* by any judgment of any trial court...." § 512.020, RSMo.1994 (emphasis added).

■ The word "aggrieved" is not defined in § 512.020. However, case law provides many broad, definitive statements concerning when a person is "aggrieved" within the contemplation of § 512.020. For instance, Defendants cite *Hertz Corp. v. State Tax Comm'n*, 528 S.W.2d 952[2] (Mo. banc 1975), for the general rule that a party is "aggrieved" when the judgment operates prejudicially and directly on a party's personal or property rights or interests and such effect is an immediate and not merely a possible remote consequence. *Id.* at 954. Many other efforts at defining an "aggrieved party" can be found,[4] but an examination of the whole body of case law on this subject "impels the conclusion that whether or not a [party] is 'aggrieved' may not be determined by application of any definition or formula but depends upon the circumstances of the particular situation at hand." *Listerman v. Day and Night Plumbing & Htg. Serv.*, 384 S.W.2d 111, 119–20 (Mo.App.1964). The *Listerman* case also reminds us that statutes which authorize appeals should be liberally construed as appeals are favored in the law. *Id.* at 120[11]. Where doubt exists as to the right of appeal, it should be resolved in favor of that right. *Id.*

■ Here, Defendants' efforts to get Meekers into this suit began in October 1996 when they tried, albeit unsuccessfully, to have Meekers joined as third-party defendants. In those early pleadings, Defendants revealed their offset strategy, i.e., anything they owed on the $350,000 note to Bydalek was subject to "offset" for amounts due them from Bydalek under the "Addendum." Similarly, Defendants' "offset" theory was the reason cited by Defendants for having Meekers added as parties in Defendants' counterclaim against Byda-

---

4. *See e.g. Davis v. Allen*, 740 S.W.2d 699, 700[3] (Mo.App.1987) (holding a judgment aggrieves a party if it directly affects some pecuniary or property interest that the party possesses); *Farrell v. DeClue*, 382 S.W.2d 462, 466[1] (Mo.App.1964) (holding aggrieved means "suffering from an infringement or denial of legal rights"); *In the Interest of A.H.*, 963 S.W.2d at 378[4] (holding aggrieved is synonymous with "adversely affected").

lek. It appears Defendants' singular motive for adding Meekers as parties was to saddle Meekers with whatever judgment was entered against Bydalek. If successful in this strategy, Defendants could later point to the judgment against Bydalek when Meekers, in the severed case, tried to rebut Defendants' offset claim by showing Bydalek owed Defendants nothing. To the extent Defendants planned to aggrieve Meekers by adding them as parties, they have effectively done so. *See Shelter Mut. Ins. Co. v. Briggs,* 793 S.W.2d 862, 864 (Mo.banc 1990). However, it is disingenuous for Defendants to allege Meekers have an "interest which would be affected by the pending" action when trying to get Meekers in the suit and then, once Meekers are parties, argue they are not aggrieved by the very judgment Defendants originally claimed would affect Meekers. Under the circumstances, Defendants cannot have it both ways.

We find Meekers did have an interest recognized by law in the outcome of Defendants' suit against Bydalek, and such interest was adversely affected by the $1,119,163.35 judgment against Bydalek. Moreover, Meekers were parties to the litigation in which the judgment was entered; consequently, they are parties aggrieved by the judgment within the meaning of § 512.020.

In so finding, we note this is not a case where the harm to Meekers is remote or speculative, e.g., where " 'by the determination of the question litigated, [Meekers] may be a party in interest to some other suit, growing out of the decision of that question.' 3 C.J.p. 625[.]" *Ong Bldg. Corp. v. GMAC Mortgage Corp.,* 851 S.W.2d 54, 55 (1993). To the contrary, the dispute between Meekers and Defendants is pending in the circuit court, and each has taken affirmative steps to pursue claims against each other. *See Briggs,* 793 S.W.2d at 863. Being both aggrieved and parties to the litigation, Meekers have standing to appeal. We reject Defendants' arguments to the contrary.

We now turn to Meekers' claims of trial court error and initially deal with their second point relied on. In that point, Meekers insist there were ambiguities in the relevant contract documents, and the trial court "erred in accepting [Defendants] twisted and unreasonable interpretation of paragraphs 5, 6, and 10 of the Addendum."

■ The contract provisions regarding Bydalek's obligation to pay interest to Defendants are in the "Addendum" to the "Real Estate Purchase Contract" between Bydalek ("Seller") and Defendants ("Buyer"). The provisions state:

"4. Buyer shall accept a title insurance policy in the form described in commitment number 408375, as issued by First American Title Insurance Company. . . .

"5. If title is not cleared, as provided herein, by September 26, 1994, [Bydalek] agrees to pay interest on 3 million dollars . . . of the purchase price of the referenced contract at the rate of 11% per year, payable as hereinafter set forth, beginning on September 27, 1994, and continuing *until the sale of the property* as hereinafter set forth, and shall be payable from the proceeds of the closing contemplated herein.[5]

"6. Seller's obligation to pay interest shall continue until the later occurring of the following events, (a) 1 year from September 12, 1994 or (b) 90 days after the issuance of a final mandate by the last Missouri Appellate Court to consider the appeal mentioned in paragraph 15

---

**5.** What Bydalek and Defendants intended when they used the phrase *"until the property is sold"* can be gleaned from *Brines I.* There, Bydalek argued "the phrase 'sale of the property' in paragraph 5 refers to an anticipated purchase of the Land by her from Defendants. . . ." 947 S.W.2d at 141. Defendants responded by conceding "that the 'sale' of the land referred to in paragraph 5 is the sale that would occur if [Bydalek] exercised her right to buy the Land from Defendants under the Option." *Id.*

of [the] title commitment number 408375 mentioned above."[6]

. . . .

"10. Notwithstanding any other provision herein to the contrary, Seller agrees to pay one half of the interest accrued, if the subject property has not been sold, said amount payable at the expiration of Seller's option provided herein." (Emphasis supplied) .

■ An ambiguity arises in a contract if there is duplicity, indistinctness, or uncertainty in the meaning of the words used in a contract, *Rodriguez v. General Acc. Ins. Co.*, 808 S.W.2d 379, 382[2] (Mo.banc 1991), or if the contract promises something at one place and takes it away at another. *Northland Ins. Companies v. Russo*, 929 S.W.2d 930, 933[5] (Mo.App. 1996). Whether ambiguity exists in a contract is measured by a "reasonable person" standard, that is, ambiguity exists if reasonable people may fairly and honestly differ in the reading of the terms because the terms are susceptible of more than one meaning. *Smith v. Taylor Morley, Inc.*, 929 S.W.2d 918, 922[7] (Mo.App.1996).

■ On the other hand, a contract is not ambiguous simply because the parties disagree over its meaning. *Cosky v. Vandalia Bus Lines*, 970 S.W.2d 861, 865[1] (Mo.App.1998). In deciding if a contract is ambiguous, all documents making up the contract must be considered and effect must be given to every part thereof when fairly and reasonably possible. *Id.* at 865[2].

■ If a contract is clear and unambiguous on its face, it is not open to judicial construction. *Brines I*, 947 S.W.2d at 142[2]. A court cannot and will not go outside an unambiguous agreement and make a new contract for the parties. *Id.* at 142[3].

Here, we find no uncertainty in the meaning of the language used in the Addendum as it relates to Bydalek's obligation to pay interest. The fifth paragraph thereof had three purposes. First, it set September 27, 1994, as the date when Bydalek's interest obligation commenced. Second, it provided details from which the daily amount of interest Bydalek owed Defendants could be calculated .[7] Third, paragraph 5 described a potential due date for Bydalek to pay interest to Defendants, i.e., when Bydalek closed her purchase of the subject land from Defendants. However, the due date for payment of interest per paragraph 5 never occurred as Bydalek never repurchased the land from Defendants. Accordingly, paragraph 5 of the addendum established two things, the beginning date of Bydalek's obligation to pay interest and the daily amount thereof.

The sixth paragraph of the addendum defined a time frame within which Bydalek's obligation to pay interest continued. The ending period for paying interest as defined therein was the later of two dates, September 12, 1995, or 90 days after issuance of a mandate by the last Missouri appellate court to consider the appeal in the Birdsong suit. *See* note 6. Accordingly, Bydalek's obligation to pay $904.11 per day began September 27, 1994 (per paragraph 5) and ended January 21, 1998 (90 days after the mandate in *Birdsong*, 953 S.W.2d 103).

Meekers argue to the contrary, asserting, *inter alia*, that it is only paragraph 10 of the Addendum which "clearly recorded the parties' intent and agreement in the event the property did not sell ." According to Meekers, paragraph 10 "provided the parties' final agreement if the property did not sell." Under the construction urged by Meekers, "Bydalek would pay one-half of the accrued interest at the ex-

---

**6.** The mandate referenced in paragraph 6 was issued October 23, 1997, based on this court's decision in *Birdsong v. Bydalek*, 953 S.W.2d 103 (Mo.App.1997).

**7.** The calculation is: ($3,000,000 × 0.11) ÷ (365 days) = $904 .11.

piration of her option." Continuing, Meekers assert that because Bydalek's option expired September 12, 1995, without a sale, "the proper calculation of interest due on that date is $158,217.50.[8] However, Meekers never explain how they arrived at their interpretations of the contract language, and we cannot perceive how paragraph 10 can be so read under the "reasonable person" standard.

After considering all provisions in the Addendum relating to Bydalek's obligations to pay interest, individually and collectively, we conclude the clear, sole purpose and intent of paragraph 10 was to set a date for Bydalek to pay a defined part of her interest *if* she did not repurchase or otherwise successfully procure a sale of the subject real estate before expiration of her option. We find no ambiguity in the Addendum relating to Bydalek's obligation to pay interest and conclude its terms are only reasonably susceptible to the meaning as we described it above. Also, since Bydalek's obligation to pay interest is not otherwise mentioned in the "Option" or "Real Estate Purchase Contract," there is obviously no ambiguity regarding that subject in those documents.

In reaching our conclusions, we have not ignored Meekers' argument that "no reasonable person" would agree to "pay interest after her option expired and she lost all right to the property." The simple answer is that courts must read and follow unambiguous contracts as written without regard to their wisdom or folly. *Rickey v. New York Life Ins. Co.*, 71 S.W.2d 88, 93[4] (1934). *See Brines I*, 947 S.W.2d at 143. We find the contract terms regarding Bydalek's interest obligation are

clear and the trial court applied the agreement as written; consequently, no error appears. Point II is denied.

As to Meekers' first point, it charges, *inter alia*, that the trial court committed reversible error when it overruled their "Motion For Continuance" and their alternative "Motion for Exclusion From Trial." Meekers charge the trial court abused its discretion in making these rulings because "there were no pleadings" at issue against them on the day of trial and "discovery was only in the initial stages of production of documents."[9] Generally, the denial or grant of a continuance is within the discretion of the trial court. *Portwood Hurt v. Hurt*, 988 S.W.2d 613, 617[1] (Mo.App.1999). A trial court decision to grant or refuse a continuance will not be reversed unless the trial court abused its discretion. *Hurt*, 988 S.W.2d at 617. An abuse of discretion means an "untenable judicial act that defies reason or works an injustice." *Jennings v. City of Kansas City*, 812 S.W.2d 724, 736 (Mo.App.1991). " 'Only in extreme cases where it clearly appears that the moving party . . . is free of any dereliction,' " will an appellate court find an abuse of discretion in denying a motion for continuance. *Harris v. Desisto*, 932 S.W.2d 435, 439 (Mo.App.1996) (quoting *Wright v. Price*, 871 S.W.2d 12, 14 (Mo. App.1993)).

Rule 65.03 prescribes the proper procedure for seeking a continuance.[10] It states, in relevant part: "An application for a continuance shall be made by written motion accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the ap-

---

**8.** Meekers' calculation proceeds as follows: ($3,000,000 × 0.11) ÷ (365 days × 350 days) ÷ 2 = $158,217.50.

**9.** Meekers' insistence that "there were no pleadings" at issue against them, begs the question. When Meekers were joined as counterclaim defendants on March 6, 1997, the issues pending were Defendants' counterclaims against Bydalek. Accordingly, Meekers and Bydalek were the only parties with a

common interest, i.e., to successfully defend against Defendants' counterclaims. Although Defendants' counterclaims sought no direct relief against Meekers, we have previously held that the resolution of those issues had the potential for adversely affecting Meekers.

**10.** All rule references are to Missouri Supreme Court Rules (1999) unless otherwise indicated.

plication is based...." Here, Meekers' motion for continuance was not in compliance with Rule 65.03 as it was neither verified nor supported by affidavit. Because Meekers did not follow the simple, explicit, and mandatory procedure to properly present a motion for continuance, the motion was deficient, and the trial court was not required to grant the relief requested. *See Nixon v. Director of Revenue,* 883 S.W.2d 945, 946[1] (Mo.App.1994). When a moving party ignores the affidavit or verification requirements of Rule 65.03, no abuse can result in denying the continuance. *Hurt,* 988 S.W.2d at 618[5]; *Lamastus v. Lamastus,* 886 S.W.2d 721, 726 (Mo. App.1994); *Nixon,* 883 S.W.2d at 946.

■ Although Meekers' noncompliance with Rule 65.03 is sufficient by itself to uphold the trial court's denial of a continuance, other factors support the trial court's decision. *See Mills v. Mills,* 939 S.W.2d 72, 75 (Mo.App.1997). In part, Meekers' stated reason for seeking a continuance was that "[p]reliminary discovery is pending in this case and documents have not been exchanged." However, Rule 61.01 provides a means for enforcement of discovery. There is no claim by Meekers whereby they sought relief under that rule. The relief sought was a continuance from the June 28 trial date. Rule 65.01 permits a court, "for good cause shown," to continue a case. Even so, continuance "for good cause shown" is not mandated merely because of unfulfilled discovery requests, especially when, as here, the moving party did not seek enforcement of discovery via Rule 61.01. *See James v. James,* 853 S.W.2d 425, 430 (Mo.App.1993). Also, we note that on the morning of the trial, the judge repeatedly asked Meekers' lawyer if Defendants had produced "the documents" mentioned in Meekers' continuance motion. Meekers' lawyer finally admitted that as "we were waiting for the Court to have this hearing," the discovery request had "been met." It was only then that the trial court overruled Meekers' motion for continuance. Moreover, Meekers had been parties to this litigation for over two years, a circumstance the court could have considered in denying the continuance. We find no abuse of trial court discretion in its denial of Meekers' motion for continuance.

■ Meekers also assert in Point I that the trial court committed reversible error when it denied their request for a jury trial. The right to a jury trial in a civil case is established by Mo. Const. art. I, § 22(a). "Absent that right being waived by a party, a trial court may not deny his or her right to a jury trial in a civil case *otherwise triable by a jury.*" *Grimes v. Bagwell,* 809 S.W.2d 441, 443 (Mo.App.1991) (emphasis supplied). A trial court commits reversible error if it denies the party a jury trial under such circumstances. *Id.* at 444.

■ It is equally well settled that some issues are not triable by a jury, and a trial court does not err by refusing to call a jury to hear such issues. For instance, construction of a written contract is ordinarily a question of law, not of fact. *Alack v. Vic Tanny Intern. of Missouri, Inc.,* 923 S.W.2d 330, 337 (Mo.banc 1996). Accordingly, once a court finds a contract unambiguous, interpretation of its provisions "is a matter of law for the trial court to decide, not a factual issue for resolution by the jury." *Hougland v. Pulitzer Pub. Co., Inc.,* 939 S.W.2d 31, 33[4] (Mo.App.1997) (citing *Smith v. Inter–County Tel. Co.,* 559 S.W.2d 518, 525 (Mo.banc 1977), *overruled on other grounds by Matteuzzi v. Columbus Partnership, L.P.,* 866 S.W.2d 128, 132 (Mo.banc 1993)).

■ In resolving Meekers' second point, we found no ambiguity in the Addendum as it relates to Bydalek's obligation to pay interest. Accordingly, interpretation of the Addendum was not a factual issue for resolution by the jury, but was for the trial court to decide as a matter of law. *Hougland,* 939 S.W.2d at 33[4]. Under the circumstances, the trial court did not err in refusing to call a jury to interpret the contract.

■ Other than interpreting the contract—which was a question of law, not fact-the only remaining issues were damages, specifically, interest and attorney fees. This follows because the pleadings reveal no issues exist concerning execution of the contract documents, consideration, or payment of the contract obligation. When such a situation attends, that is, when the only issues in a contract case are damages in the form of interest and attorney fees, the trial court may calculate those amounts and enter judgment accordingly. *Campbell v. Kelley,* 719 S.W.2d 769, 771–72 (Mo.banc 1986); *Boatmen's Bank of Butler v. Berwald,* 752 S.W.2d 829, 834–35[4] (Mo.App.1988). In such instance, a circuit court does not err in refusing to call a jury to calculate the interest, *Scheufler v. Lamb,* 169 S.W.2d 913, 914 (Mo.1943); *Hamra v. Boone County Dev. Co.,* 602 S.W.2d 721, 727 (Mo.App.1980), or to award attorney fees. *See State ex rel. Chase Resorts v. Campbell,* 913 S.W.2d 832, 835–36 (Mo.App.1995). The rationale concerning interest is that if a contract calls for interest at a stated rate for a certain time, all that remains is a mathematical calculation. *Kelley,* 719 S.W.2d at 771 (citing *Home Trust Co. v. Josephson,* 339 Mo. 170, 95 S.W.2d 1148, 1156 (Mo. banc 1936)). Similarly, an attorney fee is not a jury issue in the described circumstances because "[t]he trial court, as an expert on attorney's fees, may award reasonable amounts as a matter of law." *Chase Resorts,* 913 S.W.2d at 835[5]. Based on the foregoing authority, we find no error in the trial court's refusal to call a jury to calculate the interest or award attorney fees.

■ In Missouri, a party's right to jury trial exists only if the pleadings so warrant and there exist disputed factual issues. *See Finn v. Newsam,* 709 S.W.2d 889[3] (Mo.App.1986). As explained above, the pleadings in this case did not warrant calling a jury and there were no existing disputed factual issues; accordingly, the trial court did not err when it refused Meekers' request for a jury.

As previously stated, Meekers' first point includes the complaint that the trial court erred by not excluding them from this trial because "there were no pleadings making claim against [them] pending on the day of the separate trial." We cannot discern from their brief if Meekers intend to argue this as a separate incident of trial court error or as an integral part of their complaints about lack of jury and denial of a continuance. If the latter was intended, then such complaint has been addressed and rejected via our previous analysis.

If, on the other hand, Meekers claim this as a separate incident of trial court error, it is an unpreserved claim of error. This follows because "[a] point [relied on] which contains multifarious claims of error is not in compliance with Rule 84.04(d)." *Landers v. Huffman,* 914 S.W.2d 394, 396[5] (Mo.App.1996).[11] A point that violates Rule 84.04(d) preserves nothing for appellate review. *Id.* at 396[6]. Even so, we may exercise our discretion to review under the plain error standard if the contentions can be understood from the argument section of the brief. *Id.* In this case, we reviewed two of Meekers' Point I claims of trial court error *ex gratia.* Because we do not understand Meekers' contentions about the trial court's overruling of their alternative "Motion For Exclusion From Trial" as a separate incident of error, we will not exercise our discretion to review under the plain error standard. Point I denied.

We affirm the judgment of the trial court.

PARRISH, P.J., and MONTGOMERY, J., concur.

11. *See Thummel v. King,* 570 S.W.2d 679, 688 (Mo.banc 1978) (holding it is "fundamental error" in briefing to group numerous incidents of error into a "single point relied on" where the incidents of error do not relate to a single issue).