Renae Jo SCOTT, Appellant,

v.

Donald Glenn SCOTT and Janice E. Kite, Respondents.

No. WD 63265.

Missouri Court of Appeals, Western District.

Nov. 9, 2004.

---

Angela L. Peterson, Columbia, MO, for appellant.

Susan Ford Robertson, Columbia, MO, for respondents.

Before: ULRICH, P.J., and LOWENSTEIN and EDIN H. SMITH, JJ.

EDWIN H. SMITH, Chief Judge.

Renae Ponder, formerly Scott, appeals from the judgment of the Circuit Court of Boone County dissolving her marriage to the respondent, Donald Scott, with respect to its award of sole physical custody of their minor child, Danton Scott, to a third-party, Janice Kite, pursuant to § 452.375.5(5).[1] Pursuant to Rule 75.01,[2] the trial court had previously set aside its judgment awarding sole physical custody of Danton to the appellant.

The appellant raises five points on appeal. In Point I, she claims that the trial court erred in vacating its original judgment, awarding her sole physical custody of Danton, because it lacked good cause for doing so, as required by Rule 75.01. In Point II, she claims that the trial court erred in awarding third-party custody of Danton to Kite, rebutting the parental presumption favoring custody being awarded to her, based on a finding that she was unfit to have custody, because rebuttal of the presumption on that basis was not supported by the record. In Point III, she claims that the trial court erred in awarding third-party custody of Danton to Kite, rebutting the parental presumption favoring custody being awarded to her, based on a finding that Danton had bonded with Kite such that to remove him from her custody would be detrimental to his welfare, because the trial court's rebuttal of the presumption on that basis misapplied the law and was not supported by the record. In Point IV, she claims that the trial court erred in denying her motion for a continuance, filed the day before the trial, in which she alleged that she had not received a full response to her discovery requests, because, in doing so, the court denied her, her right to due process by forcing her to proceed without "notice of [the] claims against her[.]" In Point V, she claims that the trial court erred in awarding her visitation, because the court failed to provide her with reasonable visitation, as required by § 452.400.1.

We affirm.

## Facts

The parties were married on September 8, 1994. One child was born of the marriage, Danton Scott, born on April 1, 1996. Shortly after Danton's birth, in August 1996, the parties separated.

Following separation, Danton resided with the appellant in Columbia, Missouri. During this time, the appellant and Kite entered into a romantic relationship, which led to the appellant and Danton moving into Kite's home. Eventually, however, the relationship deteriorated, and the appellant and Danton moved out. Regardless, Kite, with the appellant's permission, continued to be actively involved in Danton's life.

In August 1999, the appellant informed Kite that she was moving to Sedalia so that she could live with her new girlfriend, Freda Swigert. Because she wanted to "test out" the situation before moving Danton, the appellant left Danton in Kite's custody, as she and Scott agreed that Kite's home was the best environment for Danton. While living in Sedalia, the appellant failed to maintain any sort of

---

1. All statutory references are to RSMo, 2000, unless otherwise indicated.

2. All rule references are to the Missouri Rules of Civil Procedure, 2004, unless otherwise indicated.

consistent contact with Danton, often failing to show up for scheduled visits. In addition, she failed to support Danton financially.

On September 30, 2002, the appellant filed her petition for dissolution of marriage, naming both Scott and Kite as respondents, requesting, *inter alia*, that the "care, custody and control of [Danton] be awarded to [her]," subject only to Scott's visitation rights. Thereafter, both respondents filed an answer to the appellant's petition, with Kite praying that "the Court dissolve the parties' marriage and place the parties' minor child in the care of Respondent, Janice E. Kite[.]" Scott, believing it was in Danton's best interest to remain with Kite, did not seek custody.

The appellant's petition was set to be heard on March 11, 2003. On March 10, 2003, the appellant filed a written motion for a continuance, alleging that: "Petitioner seeks a continuance of the trial in this matter on the grounds that counsel has not received responses to discovery[,]" and that "Counsel for Petitioner will not have time to review the discovery before the trial date of March 11, 2003." The trial court denied the motion.

On March 11, 2003, the appellant's petition was taken up and heard by the trial court. The hearing was continued until April 18, 2003. The only issue in controversy was the proper custodial arrangement for Danton. The appellant sought to have sole physical custody awarded to her, whereas the respondents sought to have sole physical custody awarded to Kite. At the close of evidence, the trial court stated: "All right. All evidence closed. Now, need findings of fact and conclusions of law, I seem to recall. Petitioner to file proposed findings of fact and conclusions of law within 20 days ... Respondent[s] 10 days thereafter." The appellant submitted her proposed judgment within the allotted

time. The respondents, however, did not. Subsequently, on May 27, 2003, the trial court entered judgment awarding the appellant sole physical custody of Danton.

On May 28, 2003, the respondents filed a "MOTION TO SET ASIDE JUDGMENT AND ALLOW FILLING OF RESPONDENTS PROPOSED JUDGMENT AND FINDINGS," asserting that their failure to file a proposed judgment within the allotted time was due to a misunderstanding, and was unintentional. On June 3, 2003, the motion was heard and sustained, and the judgment of May 27, 2003 was ordered vacated. On that same date, the respondents filed their proposed judgment. On June 5, 2003, without hearing any additional evidence, the trial court entered its judgment, awarding third-party physical custody of Danton to Kite, "subject to visits as proposed by the Guardian ad Litem." In support of its award of third-party custody of Danton, the trial court concluded that "[the appellant] is unfit and unsuitable to have custody of her child," and that "Danton's welfare, and indeed his best interests, are to place Danton, judicially, in the only home he knows, where he thrives, where he is loved, where he has not been abandoned, with the person who has, for the life he remembers, been his parent." In reaching these conclusions, the trial court found, in pertinent part, that:

a. When the child, Danton, was a toddler, following the separation of the parents, the child resided with [the appellant], and had regular and frequent visits with [his father, Donald Scott]. [The appellant] did not maintain a steady residence, nor a visitation schedule.

b. ...

c. [Kite and the appellant] became acquainted, and [Kite] provided sup-

port of various kinds to [the appellant] and Danton.

d. [Kite] provided care for Danton on a regular basis, eventually caring for Danton more than [the appellant].

e. [The appellant] moved from Columbia to Sedalia in August of 1999, testifying that she had fallen in love with another woman, and that she wanted to test things out with this woman, Freda, before moving her child to live with the two women.

f. [The appellant] left Danton with [Kite] when she moved to Sedalia.

g. [The appellant] did not provide [Kite] with any financial support for Danton.

h. . . .

i. [The appellant] failed to keep in constant contact with Danton, and would indicate she would be present for a visit, but then did not arrive.

In addition, the court found that:

a. Danton has his own room at [Kite's] home.

b. Danton thinks of [Kite] like a 'mom' because she provides his care.

c. He testified that when he visited [the appellant] at Freda's trailer, [she] was typically in her bedroom, and not accessible to him.

d. Danton does not trust [the appellant] because of the yelling and fights he has seen between [the appellant] and Freda, and he 'freaks out' when [the appellant] goes into her bedroom and stays there.

On July 1, 2003, the trial court entered an amended judgment, which did not make any substantive changes.

On July 31, 2003, the appellant filed a "MOTION TO VACATE, REOPEN, CORRECT, AMEND AND/OR MODIFY JUDGMENT AND MOTION FOR NEW TRIAL," alleging, *inter alia*, that the court lacked good cause for setting aside its May 27, 2003, judgment. On August 21, 2003, the trial court denied the motion.

This appeal followed.

**I.**

In Point I, the appellant claims that the trial court erred in vacating its original judgment, awarding her sole physical custody of Danton, because it lacked "good cause" for doing so, as required by Rule 75.01. Specifically, she claims that "the only reason for [vacating] the judgment was to allow [the] respondents to submit a proposed judgment and this reason does not constitute good cause."

Rule 75.01 provides, in pertinent part, that: "The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time." Hence, "[u]nder Rule 75.01, the trial court retains inherent power during the thirty-day period after entry of its judgment to amend [or vacate] the judgment upon a finding of good cause." *Stroup v. Leipard*, 981 S.W.2d 600, 603 (Mo.App.1998). Although the phrase good cause "eludes a precise definition," it refers to a remedial purpose and is interpreted liberally so as to avoid manifest injustice. *Id.* "On appeal from a trial court's order amending [or vacating] a judgment under Rule 75.01, this court is limited to a determination of whether the trial court had good cause within the meaning of the rule[.]" *Id.*

The appellant claims that the trial court lacked good cause for vacating its judgment, awarding her physical custody of Danton, because "the only reason for [vacating] the judgment was to allow [the] respondents to submit a proposed judg-

ment," which they had failed to do in a timely fashion. In her brief, she argues that, because "[t]he trial court did not need a proposed judgment from [the] respondents in order to have the information necessary for the trial court to make a decision on the merits of the case[,]" vacating the original judgment "in order to allow [the respondents an opportunity] to submit a proposed judgment ... [did] not constitute the good cause required under the law." In other words, she is claiming that because the court had already heard the evidence in the case, and its original judgment was presumably based thereon, since the respondents were not in default for failure to "plead or otherwise defend," as provided in Rule 74.05(a), the court's review of the respondents' proposed judgment was unnecessary in determining the merits of the court's final judgment such that the setting aside of the original judgment on that basis would not constitute good cause, as envisioned by Rule 75.01.

The appellant's argument presumes that the only basis for the trial court's setting aside of its original judgment was to allow review of the respondents' proposed judgment entry. However, as we discuss, *infra*, the record would indicate otherwise. And, inasmuch as we are to affirm the trial court's decision to set aside its judgment, pursuant to Rule 75.01, on any basis supported by the record, *Ballard v. Ballard*, 77 S.W.3d 112, 118 (Mo.App.2002), if that alternative basis is supported by the record, we must affirm, regardless of whether the review of the respondents' proposed judgment entry would constitute "good cause" under the rule.

At the hearing on the respondents' motion to vacate the trial court's original judgment, the following exchange occurred:

[APPELLANT'S COUNSEL]: We heard the evidence, we heard the testimony. We had the jail report before the Judge. There is nothing new that she's going to add in her proposed findings that the Court would have—wouldn't have considered anyway when considering what's in the best interests of this child. There's a judgment entered—

THE COURT: I may not change what I'm going to do, but I'm going to set aside the judgment and consider what has—

. . .

THE COURT: I—I think that's only fair. I—You know, I'm certainly not saying to you or to you that I'm going to change what I've done, but I'm going to look at what—

[GUARDIAN AD LITEM]: It was hard for me to tell from the order [and] the things [that] appeared in the docket entry whether the ruling was on the merits or whether it was because [counsel for the respondents] hadn't filed the—

THE COURT: Well,—

[GUARDIAN AD LITEM]: This will give us an opportunity to explain—

THE COURT:—that's part of the reason why I'm setting it aside.

[GUARDIAN AD LITEM]: Yeah—

THE COURT: We'll give it—Everybody's got to have a fair shot now.

[RESPONDENTS' COUNSEL]: Thank you.

THE COURT: Whether we change it or not, I don't know.

This exchange indicates that the trial court may have, in fact, entered its original judgment based, in part, on the respondents' failure to provide a proposed judgment entry in a timely fashion. This, of course, it could not do. *See Schindler v. McCluskey*, 58 S.W.3d 48, 49–50 (Mo.App.2001) (stating that a trial court's ruling, with the exception of dismissals as a matter of law,

and consent or default judgments, must be based on the evidence presented to the court). Thus, to correct this situation, the trial court ordered its original judgment set aside. The appellant makes no argument on appeal as to whether this would or would not constitute "good cause" under Rule 75.01. The fact that she does not challenge this basis on appeal would be sufficient, in and of itself, to affirm the court's decision to set aside its judgment. *See Wood v. Wood,* 94 S.W.3d 397, 409 (Mo.App.2003) (stating that the appellant's failure to challenge the actual determination of the trial court "alone would be sufficient for us to deny any appellate relief"). However, even if she had, she would lose in that obviously the trial court's desire to review the evidence and render its judgment in accordance therewith would constitute good cause for the setting aside of its original judgment and would be in keeping with the remedial purpose of the rule.

Point denied.

## II.

In both Points II and III, the appellant claims that the trial court erred in awarding third-party custody of Danton to Kite, based on the rebuttal of the parental presumption favoring custody being awarded to her, because rebuttal was not supported by the record. Because we find, *infra,* that the disposition of Point III moots Point II, we address Point III alone.

Section 452.375 governs child custody, which provides, in pertinent part, as to third-party custody:

5. Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows:

. . .

(5) Third party custody or visitation:

(a) When the court finds that each parent is unfit, unsuitable, or unable to be a custodian, or the welfare of the child requires, and it is in the best interests of the child then custody, temporary custody or visitation may be awarded to any other person or persons deemed by the court to be suitable and able to provide an adequate and stable environment for the child.

This language has been interpreted as establishing a "rebuttable presumption that parents are fit, suitable, and able custodians of their children and that their welfare is best served by awarding their custody to their parents." *Flathers v. Flathers,* 948 S.W.2d 463, 466 (Mo.App.1997); *Jones v. Jones,* 10 S.W.3d 528, 535 (Mo.App.1999). Thus, in accordance with this presumption, natural parents are not to be denied custody of their minor children, unless the third party seeking custody carries his or her burden of showing that: (1) each natural parent is unfit, unsuitable, or unable to have custody or that the welfare of the children requires it; and (2) it is in the best interests of the minor children for the third party to have custody. *Flathers,* 948 S.W.2d at 466. Thus, there are two prongs that must be satisfied to rebut the parental presumption: (1) the rebuttal prong; and (2) the best interests prong. As to the rebuttal prong, the statute recognizes two bases: (1) the "fitness basis"; and (2) the "welfare basis." *Id.* at 469. The trial court does not reach the best-interests prong, unless it first finds either the existence of the fitness or welfare basis for rebuttal. *Jones,* 10 S.W.3d at 535–36.

Here, the trial court found that the parental presumption of the appellant was rebutted on both the fitness and welfare bases. In this point the appellant challenges the trial court's rebuttal on the fitness basis. In Point III, she challenges the trial court's rebuttal on the welfare

basis. Inasmuch as we are to affirm the trial court's judgment on any basis supported by the record, *Ballard*, 77 S.W.3d at 118, if we find that the record here supports the trial court's rebuttal of the parental presumption of the appellant on either the fitness or welfare basis we will affirm, as the appellant does not challenge the court's best-interests finding on appeal. And, because we find that the record supports the trial court's rebuttal of the parental presumption on the welfare basis, we address Point III without addressing Point II.

█ In Point III, the appellant claims that the trial court erred in awarding custody of Danton to Kite, rebutting the parental presumption favoring custody being awarded to her, based on a finding that Danton had bonded with Kite such that to remove him from her custody would be detrimental to his welfare, because the trial court's rebuttal of the presumption on that basis misapplied the law and was not supported by the record. We disagree.

█ Our standard of review in a child custody case is governed, as in other judge-tried cases, by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. *banc* 1976), interpreting what is now Rule 73.01(c). *McCreary v. McCreary*, 954 S.W.2d 433, 438–39 (Mo. App.1997). Under this standard, we will affirm the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*; *Reeves–Weible v. Reeves*, 995 S.W.2d 50, 55 (Mo.App.1999); *Rogers v. Rogers*, 923 S.W.2d 381, 383 (Mo.App. 1996). "Because the trial court is in the best position to weigh all the evidence and render a judgment based on the evidence, the judgment is to be affirmed under any reasonable theory supported by the evidence." *Jones*, 10 S.W.3d at 532.

█ In reviewing a determination of child custody, of the trial court:

[a] great deal of caution should be exercised in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence, and only then upon a firm belief that the judgment of the trial court was incorrect. In child custody matters the trial court's determination must be given greater deference than in other cases.

*Id.* (citations omitted). "When there is conflicting evidence, the trial court has the discretion to determine the credibility of the witnesses, accepting or rejecting all, part, or none of the testimony it hears." *Id.* We will view the evidence in the light most favorable to the decision of the trial court. *McCreary*, 954 S.W.2d at 439.

The appellant first claims in this point that the trial court misapplied the law in equating Danton's "welfare" with his "best interests," pointing to the court's finding in its judgment:

In considering the second prong of [452.375.5(5)(a)], the welfare of the child must dictate custody in a third party. Danton's welfare, and indeed his best interests, are to place Danton, judicially, in the only home he knows, where he thrives, where he is loved, where he has not been abandoned, with the person who has, for the life he remembers, been his parent.

While the appellant is correct in asserting that the terms "welfare" and "best interests" in § 452.375.5 are not synonymous, *see Jones*, 10 S.W.3d at 536–37 (explaining that the term welfare means something other than best interests in that, in order to demonstrate that a child's welfare requires that he be placed in third party custody, the third party must plead and prove special or extraordinary circumstances), we see nothing in the record, including the language relied upon by the appellant, that would indicate the trial court failed to recognize this distinction.

In claiming that the trial court erroneously equated Danton's "welfare" with his "best interests," for purposes of § 452.375.5, based on the finding of the court's judgment quoted, *supra*, the appellant takes it out of context. In context, it reads:

This Court is in the position of balancing the facts and the law to resolve the ultimate issue at hand: the best interests of Danton. Two main principles dictate: parents are the presumed correct custodian for children (§ 452.375.5 RSMo.), and the eight statutory factors in determining a child's best interest (§ 452.375.2). Under these principles, the appropriate custodian for Danton is Janice.

a.  Statute, and indeed human nature, dictate that biological parents are the presumed best custodians for a child. However, this is a rebuttable guideline. Section 452.375.5 requires the parents of a child to be unfit, unsuitable or unable to have custody of a child, or the welfare of the child must dictate custody in a third party. In both of these exceptions to the norm, the best interest of the child must be considered. Here, all considerations align themselves ... The Court finds that [the appellant] is unfit and unsuitable to have custody of her child. *In considering the second prong of this statute, the welfare of the child must dictate custody in a third party. Danton's welfare, and indeed his best interests, are to place Danton, judicially, in the only home he knows, where he thrives, where he is loved, where he has not been abandoned, with the person who has, for the life he remembers, been his parent.*

b.  This court also considers the eight statutory factors for determining a

child's best interest set forth in section 452.375.2 RSMo.

. . .

There can be no doubt, based on the foregoing, that the trial court recognized the distinction between the meaning of welfare and best interests for purposes of § 452.375.5. Hence, the appellant's claim that the trial court misapplied the law in that it "erroneously equated welfare and best interests[,]" is wholly without merit.

In this point, the appellant also claims that the trial court's finding that Danton's welfare demanded an award of third-party custody to Kite was not supported by the record. We disagree.

In *Jones*, we explained that:

In holding that a significant bonding familial custody relationship with third parties is sufficient to rebut the parental presumption [under the welfare basis], the courts have recognized that the removal of children from their present home can, in some circumstances, be so traumatizing as to cause irreversible harm to the children's mental and physical development. Thus, it is logical that changes in custody, including third-party custody, are not favored by the courts.

10 S.W.3d at 538 (citing *Flathers*, 948 S.W.2d at 470). Hence, our appellate courts have recognized that the welfare of a child might require that he or she remain in the custody of a third party, rather than be returned to the custody of his or her biological parent, assuming the third party did not conspire to limit the biological parent's contact with the child. *Id.* at 538–39.

The record in this case contained sufficient evidence from which the trial court could reasonably find that Danton had bonded with Kite such that to remove him from her custody would be detrimental to his welfare. The evidence favorable to the trial court's award of custody to Kite re-

flects that she had, at the time of trial, been caring exclusively for Danton from August of 1999, when the appellant moved to Sedalia to live with her new girlfriend. During this time Danton had developed both mentally and physically as expected and appeared to be a normal, well-adjusted young man. In addition, Danton testified that he did not want to live with the appellant and that he thought of Kite as his mother. Under these circumstances, we cannot say that the trial court was wrong in finding that Danton had bonded with Kite such that to remove him from her custody would be detrimental to his welfare.

Point denied.

### III.

In Point IV, the appellant claims that the trial court erred in denying her motion for a continuance, filed the day before the trial, in which she alleged that she had not received a full response to her discovery requests, because, in doing so, the court denied her, her right to due process by forcing her to proceed without "notice of [the] claims against her[.]" Specifically, she claims that, at the time of trial, she was not fully aware of the specific reasons being asserted by the respondents as to why Danton should be placed in third-party custody in that the respondents had "failed to file affirmative pleadings or comply with discovery requests[.]"

A decision on whether to grant a continuance lies within the sound discretion of the trial court. *State v. Wolf,* 91 S.W.3d 636, 645 (Mo.App.2002). "Reversal is warranted only upon a very strong showing that the court abused its discretion and prejudice resulted." *Id.* (quoting *State v. Christeson,* 50 S.W.3d 251, 261 (Mo. *banc* 2001)). "A court abuses its discretion when its ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as

to shock the sense of justice and indicate a lack of careful consideration." *Id.* Only in extreme cases, where it clearly appears that the moving party is free of any dereliction, will an appellate court find an abuse of discretion. *Bydalek v. Brines,* 29 S.W.3d 848, 855 (Mo.App.2000).

Rule 65.03, which prescribes the proper procedure for seeking a continuance, provides, in pertinent part, that: "An application for a continuance shall be made by a written motion accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based, unless the adverse party consents that the application for continuance be made orally." Failure to follow "the simple, explicit, and mandatory procedure to properly present a motion for continuance" renders the motion deficient, meaning the trial court is not obligated to consider the motion. *Bydalek,* 29 S.W.3d at 856 (citing *Nixon v. Dir. of Revenue,* 883 S.W.2d 945, 946 (Mo. App.1994)). Thus, "[i]n the absence of compliance with the requirements of [the rule], there can be no abuse of discretion in denying a continuance." *Smith v. Smith,* 952 S.W.2d 771, 773 (Mo.App.1997). Put another way, "[w]hen a moving party ignores the affidavit or verification requirements of Rule 65.03, no abuse can result in denying the continuance." *Bydalek,* 29 S.W.3d at 856.

In this case, the appellant filed her written motion to continue on March 10, 2003, the day before the trial was scheduled to begin. However, the record clearly reveals that the motion was not accompanied by an affidavit setting forth the facts upon which the application is based, as required by Rule 65.03. Hence, the appellant did not comply with the requirements of the rule, and, consequently, the trial court did not abuse its discretion in denying the appellant's motion to continue.

Point denied.

## IV.

In Point V, the appellant claims that the trial court erred in awarding her visitation, because the court failed to provide her with reasonable visitation, as required by § 452.400.1. Specifically, she claims that the trial court's visitation award failed to provide her with reasonable visitation rights in that it "does not provide for frequent and meaningful contact between [her] and [Danton]." We disagree.

Generally, trial courts are vested with broad discretion with regard to matters of visitation, and the exercise of that discretion is given great deference. *In re S.E.P. v. Petry*, 35 S.W.3d 862, 872 (Mo.App.2001). We reverse such determinations only upon a showing that the trial court has exercised its discretion in a manner that is not in the child's best interests. *See id.*

Section 452.400.1, which governs visitation, provides, in pertinent part, that: "A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his or her emotional development." Hence, under the statute, in the absence of a finding that visitation would endanger the child's physical health or impair his or her emotional development, a parent not granted custody of the child, such as the appellant in this case, is entitled to reasonable visitation rights. Nonetheless, when determining what constitutes reasonable visitation rights, the trial court's paramount concern still must be the child's best interests. *See Searcy v. Searcy*, 38 S.W.3d 462, 469 (Mo.App.2001) (explaining that, in any case concerning visitation rights, the paramount concern of the court is the best interests of the child).

Here, the appellant claims that, because the trial court did not make a finding that visitation would endanger Danton's health or impair his emotional development, she is entitled to reasonable rights, which she did not receive. While we certainly agree that she is entitled to reasonable visitation rights under the statute, we disagree with the appellant's claim that the trial court's award of visitation in this case, in light of the record, is unreasonable.

The trial court's award of visitation, as set forth in its judgment, provides as follows:

B. Schedule of [the appellant] and Danton:

1. Three hours on a Friday evening, Saturday, or Sunday, during a weekend in July as designated by [Kite] in consultation with [the appellant] at [Kite's] home.

2. Two weeks later, three hours on a Friday evening, Saturday, or Sunday, as designated by [the appellant] in consultation with [Kite] at [the appellant's] home.

3. Thereafter, every third weekend, Saturday from 9:00 a.m. to 7:00 p.m. in even numbered months, and Sunday from 9:00 a.m. to 7:00 p.m. in odd numbered months. This particular schedule shall last for six months from the date of the first visit of this paragraph.

4. Finally, Danton shall visit [the appellant] every third weekend from 6:00 p.m. Friday until 7:00 p.m. Saturday in even numbered months, and from 6:00 p.m. Saturday until 7:00 p.m. Sunday in odd numbered months.

In addition, the appellant was awarded alternating holiday visitation and two uninterrupted weeks of visitation during summer vacation, commencing in 2004. It would appear that by limiting the appel-

lant's visitation in the beginning, and thereafter allowing for gradual increases over time, the trial court was attempting to establish a transitional period to reacquaint Danton with the appellant. The question, then, is whether it was reasonable for the trial court to initially limit the appellant's visitation, under the circumstances presented in this case. In other words, we must determine whether the trial court's initial limitation of visitation with the appellant constitutes a reasonable balance between the appellant's right to visitation and Danton's best interests.

As we discussed, *supra*, Kite had exclusively cared for Danton since August 1999. During that time, the appellant had significantly lessened the bond that may have existed between Danton and her. Specifically, besides the fact that she had abandoned him, she had consistently failed to show for scheduled visits, and, when Danton visited her in Sedalia, she often spent the majority of the time in her room, which Danton testified "freaked him out." Taking these circumstances into consideration, we cannot say that the trial court's decision to limit the appellant's visitation with Danton initially, providing for gradual increases over time, was unreasonable. In other words, we cannot say that establishing a transitional period was not in Danton's best interests. Consequently, we must affirm.

Point denied.

## Conclusion

The judgment of the circuit court dissolving the appellant's marriage to Donald Scott is affirmed in all respects.

ULRICH, P.J., and LOWENSTEIN, J., concur.